IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | NO. 5:17-CV-398-FL |
| $40,000.00 IN UNITED STATES CURRENCY, | ) | |
| Defendant. | ) | |
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| v. | ) | NO. 5:17-CV-485-FL |
| $40,000.00 IN UNITED STATES CURRENCY, | ) | |
| Defendant. | ) | |

ORDER

These matters come before the court on motions to dismiss of claimants Jason Do (No. 5:17-CV-398-FL at DE 12) and Son Ba Do (No. 5:17-CV-485-FL at DE 18). The motions have been fully briefed, and in this posture the issues presented are ripe for ruling. For the reasons noted, the motions are denied.

**STATEMENT OF THE CASE**

The government initiated these civil forfeiture actions on August 3, 2017, as to claimant Jason Do, and September 21, 2017, as to claimant Son Ba Do, by filing the same complaint in each case for forfeiture in rem against $40,000.00 in U.S. currency to enforce 18 U.S.C. § 981(a)(1)(c)

and 21 U.S.C. § 881(a)(6), providing for the forfeiture constituting or derived from proceeds traceable to violations of 21 U.S.C. § 841, specifically possession with intent to distribute a controlled substance. On October 22, 2017 and January 5, 2018, claimants Jason Do and Son Ba Do, respectively, filed claims alleging ownership and possessory interest in defendant funds.

On November 16, 2017 and January 26, 2018, claimants Jason Do and Son Ba Do, respectively, filed the instant motions to dismiss, both arguing the government has failed to allege sufficient facts to support a reasonable belief that the currency at issue is subject to forfeiture.

## STATEMENT OF THE FACTS

The relevant facts alleged in the complaints may be summarized as follows.[1] Homeland Security Investigations ("HSI") Task Force Officers ("TFO") at Raleigh Durham International Airport encountered claimants after Transportation Security Administration Officers located a large amount of bulk currency their carry-on items. Claimants provided implausible and vague statements as to the origins of the money and the reason for their travel. HSI TFO seized the bulk currency for violations of 18 U.S.C. §1956, money laundering, and also seized cell phones and electronic media from claimants.

HSI TFO Aaron Woodlief ("Woodlief") began his investigation by interviewing claimant Jason Do, who claimed to be a nail care specialist in "High Park" in Raleigh, North Carolina, and a successful gambler who had won $20,000.00 at the Harrah's Casino in Cherokee. Claimant Jason Do claimed he and claimant Son Ba Do, his brother, were traveling to the Seattle, Washington area to gamble, but was unable to produce the name of the casino where they were planning to gamble or the hotel where they were planning to stay. Claimant Jason Do was unable to produce any

---

[1] Identical facts are alleged in both cases.

information of further accommodations or travel plans once claimants arrived in Washington.

A criminal history check for claimant Jason Do revealed a July 9, 2013, arrest in Wake County, North Carolina for possession with intent to sell and deliver marijuana, conspiracy to sell/deliver marijuana, conspiracy to sell/deliver marijuana, possession of drug paraphernalia, and resist, delay and obstruction a public officer. The case was dismissed without leave by the district attorney's office with a note stating claimant Jason Do's co-defendant accepted responsibility.

A criminal history check for claimant Son Ba Do revealed a January 22, 2015, arrest by the city of Raleigh Police Department for possession with intent to sell/deliver marijuana, felony maintaining a dwelling for controlled substances, and conspiracy to sell/deliver marijuana. Claimant Son Ba Do pleaded guilty and successfully completed deferred prosecution and the charges were dismissed by the district attorney's office. In this case, an individual Calvin Lee had shipped approximately 4.5 pounds of marijuana to claimant Son Ba Do from an address in Renton, Washington.

Woodlief spoke with Harrah's Cherokee Manager who stated that claimant Jason Do was last at Harrah's Cherokee on April 2, 2017, but had not been a big money winner since December 2015. On April 10, 2017, Woodlief requested TFO Carl Rodriguez and his narcotics detection canine partner (K-9) Arko to conduct a controlled K-9 search. The K-9 search was conducted at the RDU Police Headquarters. The large amount of money was placed in a piece of empty luggage and randomly lined up with 5 other similar empty bags out of the K-9 and handler's view. TFO Rodriguez and Arko conducted the search. Arko alerted to the presence of narcotics on the bag containing the seized money.

On April 10, 2017, Woodlief took the seized currency to a Wells Fargo Bank, where

employees counted and found the combined total of the currency found in the possession of claimants was $80,000.00. Claimants had claimed they were each carrying $30,000.00.

Summons was issued to the Cherokee Gaming Commission. In response, officers received currency transaction reports ("CTR") on both claimants. Since 2014, claimant Jason Do has had $441,385.00 reported as cash into the Cherokee Casinos and $307,250.00 cash out. Claimant Son Ba Do has had $47,020.00 cash into the Cherokee Casinos and $168,706.00 cash out. Additionally, a review of the players reports with regard to some of the dates and times referenced by the CTRs show winnings reported that do not match the amount reported won by the casino. Finally, claimant Jason Do has lost a total of approximately $47,499.00 at the Cherokee Casino since 2014, and claimant Son Ba Do has won approximately $32,493.00 during that same time frame.

## COURT'S DISCUSSION

A.  Standard of Review

The pleading standard for civil forfeiture actions was initially set forth in the case of United States v. Mondragon, 313 F.3d 862, 865 (4th Cir. 2002), which held that a complaint "must allege sufficient facts to support a reasonable belief that the property is subject to forfeiture." The Mondragon decision interpreted the pleading standard in prior Rule E(2)(a) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supp. R."), which was superseded by the 2006 promulgation of Supp. R. G(2) explicitly adopting the "reasonable belief" standard. Supp. R. G(2)(f); see also Supp. R. G, Advisory Committee Notes (citing Mondragon and explaining that Rule G(2)(f) "carries this forfeiture case law forward without change").

The pleading requirements of Supp. R. G(2)(f) are satisfied if the government pleads particular facts demonstrating a "sufficient connection" between the property seized and illegal

4

activity. Mondragon, 313 F.3d at 866; see also id. at 867 (holding that the complaint need only "state[] the circumstances giving rise to the forfeiture with sufficient particularity" to allow a claimant to "commence[] a meaningful investigation of the facts and draft[] a responsive pleading").

Congress has provided that "the Government may use evidence gathered after the filing of a complaint for forfeiture" to meet its burden at trial, and also that "[n]o complaint may be dismissed on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property." 18 U.S.C. §§ 983(c)(2) & (a)(3)(D); accord Supp. R. G(8)(b)(ii).

B. Analysis

Both claimants argue that the government has failed to meets its burden by sufficiently pleading the connection between the currency at issue and a drug offense. (Jason Do, DE 13 at 4; Son Ba Do, DE 19 at 7).

However, when viewing the facts as set forth in the complaint in light most favorable to the government, see Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009), the totality of the allegations set forth in the complaint "support a reasonable belief" that the property is subject to forfeiture, Supp. R. G(2)(f), including adequate allegations of a connection between the currency at issue and a drug offense.

First, courts recognize that possession of a large sum of cash is itself a factor to consider. See United States v. Thomas, 913 F.2d 1111, 1115 (4th Cir. 1990) (citations omitted) ("The court failed to note the significance of this evidence, namely that the possession of unusually large amounts of cash . . . may be circumstantial evidence of drug trafficking. Here the undisputed cash

5

expenditures vastly exceeded Thomas' legitimate income.")[2]; see also United States v. $124,700, 458 F.3d 822, 826 (8th Cir. 2006) ("Possession of a large sum of cash is strong evidence of a connection to drug activity."); United States v. $215,300, 882 F.2d 417, 419 (9th Cir. 1989) ("Carrying a large sum of cash is 'strong evidence' of [a relationship to drug trafficking] even without the presence of drugs or drug paraphernalia.").

Second, courts recognize that travel to a destination that is a known source of drugs is a factor to consider. See United States v. $50,720.00 in U.S. Currency, 589 F. Supp. 2d 582, 584 (E.D.N.C. 2008) ("Lastly, all of this occurred on a known drug corridor for illegal drugs to a known source city for illegal drugs."). Here, claimants were flying with a large sum of currency to Seattle, Washington, a source state for marijuana, and the state from which claimant Son Ba Do previously pleaded guilty to receiving a shipment of 4.5 pounds of marijuana. See United States v. $4,266.75, No. 1:07-CV-565, 2008 WL 5234346, at *4 (M.D.N.C. Dec. 12, 2008) (weighing a claimant's "established [criminal] history of drug trafficking" as a factor supporting forfeiture and recognizing that "drug trafficking is a continuing enterprise").[3]

Finally, "[i]nconsistent and implausible answers regarding travel plans and the source of the

---

[2] As stated by the government:

Thomas (along with several other cases cited herein) was decided prior to the enactment of the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), codified at 18 U.S.C. § 983, which increased the government's burden from showing probable cause for forfeiture to proving that the property is subject to forfeiture by a preponderance of the evidence. Pre–CAFRA cases are still relevant, however, because "[f]actors that weighed in favor of forfeiture in the past continue to do so now — with the obvious caveat that the government must show more or stronger evidence establishing a link between forfeited property and illegal activity." United States v. $30,670.00, 403 F.3d 448, 469 (7th Cir. 2005).

(Jason Do, DE 14 at 7n.3; Son Ba Do, DE 21 at 7n.3)

[3] Claimant Son Ba Do argues that these charges are two years old and it was not established that claimant was the intended recipient of the package. (Son Ba Do, DE 19 at 4). However, as alleged in the complaint, claimant pleaded guilty to charges that involved receiving 4.5 pounds of marijuana shipped from Washington. Thus, claimants arguments are unavailing.

6

money supports a link to illegal activity." United States v. $67,040.00, No. 5:14-CV-75, 2015 WL 1418039, at *6 (W.D.N.C. Mar. 27, 2015) (quoting United States v. $105,180.00, 2013 WL 2153326, at *9 (D. Ariz. May 17, 2013)). Here, claimants provided implausible and vague statements as to the origins of the money and the reason for their travel, with claimant Jason Do unable to provide basic supporting information such as the name of the casino where they intended to gamble or the name of the hotel where they were staying. Additionally, claimants were unable to correctly quantify the amount of cash each were carrying, claiming it to be only $30,000.00. Moreover, claimant Jason Do told agents that he is employed as a nail care specialist, but such legitimate employment alone would not reasonably account for claimants' possession of $40,000 disposable cash that he could afford to gamble away. See United States v. Currency, U.S., $147,900.00, 450 F. App'x 261, 264 (4th Cir. 2011) (noting that the absence of "reported income or work history that could explain the large amount of currency in his possession" supports forfeitability) (citing United States v. $174,206, 320 F.3d 658, 662 (6th Cir. 2003)).

Both claimants challenge the probative value of the dog alert and argue they each offered law enforcement a legitimate explanation for carrying the currency, that it was intended for gambling. (Jason Do, DE 13 at 5-6; Son Ba Do, DE 19 at 4-7). The court will address each argument in turn.

An alert by a properly trained dog is probative evidence that the currency is tainted with the odor of illegal narcotics. See United States v. $433,980 in U.S. Currency, 473 F. Supp. 2d 685, 691 (E.D.N.C. 2007) ("Understood in light of Jones' testimony [as to his dog's training], the K–9 sniffs raise an inference that the $433,980 carried by Rodriguez and Escobar had recently been exposed to illegal drugs."). While the dog alert in this case may not be able to differentiate between the

$40,000.00 in currency in each of claimants' possessions, the inference remains that one or both bundles of currency had recently been in close proximity to a narcotics, particularly in that claimants were traveling together and had divided the currency equally between them.

Claimant Son Ba Do's argument, that the majority of United States currency in circulation is contaminated with drug residue, (Son Ba Do, DE 21 at 9), has been addressed and rejected as a basis for discrediting a dog alert, in light of research showing that drug detector dogs alert not to the drug molecules adhering to the currency itself, but rather to the odor of volatile chemical byproducts of the drugs that evaporate and dissipate quickly after the initial exposure. See United States v. $98,699.60 in U.S. Currency, No. 5:13-CV-585-D, 2017 WL 750701, at *18 (E.D.N.C. Feb. 23, 2017) ("More recently, however, courts have accepted scientific evidence that a drug dog does not alert to the illegal drug itself or to any trace drug residue adhering to seized currency").[4]

Both claimants argue that government investigation corroborates that each claimant is a gambler. (See Jason Do, DE 13 at 6 ("statements made by Jason Do that he was a prolific gambler were corroborated by government investigation . . . ."); Son Ba Do, DE 19 at 6-7 ("The government verified that Son Ba Do was a gambler . . . . Indeed, less than a week after seizure, Son Ba Do was at the casino in Cherokee, North Carolina, and left with a $13,000 payout")).

Regarding Jason Do, the government acknowledges that subsequent investigation did somewhat corroborate claimant's story that he has a history of high-stakes gambling, but argues that "the amounts that claimant has wagered (over $400,000 in since 2014), and that he has been able to sustain in gambling losses (totaling nearly $50,000 over the same period), appear even more

---

[4] Claimant Son Ba Do additionally argues as to the significance that no incriminating evidence was found on his confiscated electronic devices. (Son Ba Do, DE 19 at 6). These representations are outside the allegations of the complaint. Additionally the government informs the court that local authorities obtained a state search warrant for the phones and the government is still making efforts to access the data. (Son Ba Do, DE 21 at 13).

criminally suspect in light of his claimed occupation," as nail care specialist. (Jason Do, DE 14 at 11). Regarding Son Ba Do, the government queries "how someone who just had $40,000 seized from him can afford to go gambling less than a week later and leave with a $13,000 payout." (Son Ba Do, DE 21 at 13).

Taking the facts alleged in the complaint in light most favorable to the government, a disparity has been sufficiently alleged regarding expenditures versus income with regard to claimant Jason Do. See Thomas, 913 F.2d at 1114 ("[W]here a [claimant's] verifiable income cannot possibly account for the level of wealth displayed and where there is strong evidence that the defendant is a drug trafficker, then there is probable cause to believe that the wealth is either a direct product of the illicit activity or that it is traceable to the activity as proceeds.") (quoting Edwards, 885 F.2d at 390).[5]

Claimant Jason Do additionally argues as to the significance that no drugs or drug paraphernalia, or other evidence of drug dealing, were in claimant's possession at the time of the seizure and that claimant took no extreme measures to hide or conceal the currency. (Jason Do, DE 13 at 4-5). However, forfeiture may be established circumstantially, based upon the totality of the circumstances, and a "direct connection between the property subject to seizure and the illegal activity that renders the items forfeitable" need not be shown. Thomas, 913 F.2d at 1117 (quoting Edwards, 885 F.2d at 390); see also $98,699.60, 2017 WL 750701, at *15 ("The government need not link the defendant property to a specific drug transaction, but may instead meet its burden with circumstantial evidence linking the property to drug trafficking generally . . . . In analyzing whether the government has met this burden, the court examines the totality of the circumstances.") (quoting

---

[5] Given the additional allegations made concerning claimant Son Ba Do already discussed, the court does not find the lack of allegation concerning this claimant's income fatal to the government's complaint.

Thomas, 913 F.2d at 1115).

Here, the totality of the allegations set forth in the complaint "support a reasonable belief" that the property is subject to forfeiture, Supp. R. G(2)(f), and accordingly claimants' motions to dismiss are denied.

## CONCLUSION

Based on the foregoing, the court DENIES motions to dismiss of claimants Jason Do (No. 5:17-CV-398-FL at DE 12) and Son Ba Do (No. 5:17-CV-485-FL at DE 18).

SO ORDERED, this the 24th day of May, 2018.

LOUISE W. FLANAGAN
United States District Judge